## Reading Country Club Corporation Case.
## Schlippert Appeal.

Argued May 27, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused January 21, 1972.

*Robert M. Landis,* with him *Arthur E. Newbold, IV, and Dechert, Price & Rhoads,* for appellant.

*Murray S. Eckell,* with him *Eckell, Sparks & Monte,* for appellee.

OPINION BY MR. JUSTICE JONES, December 20, 1971:

The Reading Country Club Corporation was incorporated pursuant to the Nonprofit Corporation Law, Act of May 5, 1933, P. L. 289, *as amended,* 15 P.S. §7001 *et seq.,* on January 8, 1944, by twenty stockhold-

ers. By January 7, 1969, twenty-five years later, the number of stockholders had dwindled to sixteen with each stockholder owning fifty shares. On that date, the sixteen stockholders (hereinafter "sellers") entered into an agreement to sell their 800 shares, the total outstanding, to John Bosacco, Dale L. Reese and Francis J. Catania (hereinafter "buyers" for a total sum of $1,300,000. At the closing on August 26, 1969, the buyers acquired all the outstanding shares from the sellers and received the resignation of all directors and officers. Immediately thereafter, the buyers conducted a meeting and authorized the institution of voluntary proceedings for dissolution of the corporation and distribution of of the corporate assets among the shareholders.

It appears that John Bosacco had earlier borrowed $100,000 from a bank to make a down payment to the sellers on the shares at closing. After the buyers acquired the shares at closing, a bank loan of $1,300,000 was obtained by the buyers, who caused the execution of a mortgage on the assets of the corporation. The proceeds of the mortgage were then employed to complete the transaction between the buyers and sellers and to reimburse John Bosacco. Looking through the financial legerdemain, it appears that the buyers essentially mortgaged the assets of the corporation and used the proceeds to purchase all of the shares in the corporation.

On June 12, 1970, the buyers filed a petition for dissolution with the Court of Common Pleas under the Nonprofit Corporation Law and a hearing was held on July 27, 1970. At the hearing, the court below concluded that an opportunity to vote must be afforded the various classes of social members and a second hearing was scheduled for August 10, 1970. After a third hearing, the court below entered an order dissolving the corporation as of August 18, 1970. This appeal followed.

Section 308 of the Nonprofit Corporation Law, Act of May 5, 1933, P. L. 289, §308, *as amended,* 15 P.S. §7308, provides: "All proceeds derived by a nonprofit corporation from any loan, sale lease, ground rent, or mortgage, shall be faithfully and specifically used for or applied to the lawful activities of the corporation . . ." The pivotal question then becomes whether the distribution of the proceeds of the mortgage on the corporation's assets to the buyers and their use of them to pay for this stock was a "lawful [activity] of the corporation." To our way of thinking, the answer to this question must be NO; the buyers' financial wizardry does not comport with this statutory mandate.

Section 304 of the Act of May 5, 1933, *as amended,* 15 P.S. §7304, provides in part that: "No dividends shall be directly or indirectly paid on any . . . shares [of a nonprofit corporation], nor shall the shareholders be entitled to any portion of the earnings of such corporation derived through increment of value upon its property, or otherwise incidentally made, *but upon dissolution* of any such corporation the shareholders shall be entitled to a pro rata distribution of the assets thereof, after the payment of all debts and the liquidation of all liabilities. . . ." (Emphasis added.) Similarly, Section 309 of the Act of May 5, 1933, *as amended,* 15 P.S. §7309, provides in part that: "All moneys . . . received or collected by any nonprofit corporation shall be applied to the maintenance and operation or the furtherance of the lawful activities of the corporation, and in no case shall such moneys be divided or distributed in any manner whatsoever among the members of the corporation." The By-laws of the Reading Country Club Corporation, reflecting these statutory prohibitions, provided, in Article 8, Section 1, that: "No dividends shall be directly paid on any such shares, nor shall the shareholders be entitled to any portion of the earnings of the corporation derived through incre-

ment of value upon its property, or otherwise incidentally made, *but upon dissolution* of the corporation the shareholders shall be entitled to a pro rata distribution of the assets thereof. . . ." (Emphasis added.)

Stressing the fact that these statutory and corporate provisions do not apply "upon dissolution", the appellee contends that the distribution of the mortgage proceeds was entirely proper. We believe that the appellee's argument places the cart before the horse. Reviewing the record, the mortgage was executed and a loan was obtained on August 26, 1969. The final decree of dissolution was not filed until one year later on August 18, 1970. Thus, the distribution of the mortgage proceeds to the buyers as sole shareholders of the corporation was hardly "upon dissolution". Indeed, the distribution of the mortgage proceeds antedates the filing of a petition for dissolution on June 12, 1970. Accordingly, we believe that the distribution of the mortgage proceeds prior to dissolution constituted an unlawful activity of the corporation within the meaning of Section 308 of the Nonprofit Corporation Law.

Decree reversed. Costs on appellee.

Mr. Chief Justice BELL, Mr. Justice O'BRIEN and Mr. Justice BARBIERI dissent.